5

1 | JEFFREY S. SHINBROT, ESQ.
2 | (SBN 155486)
jeffrey@shinbrotfirm.com
3 | JEFFREY S. SHINBROT, APLC
4 | 8200 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
5 | Telephone:  (310) 659-5444
6 | Fax (310) 878-8304
Special Litigation Counsel to Debtor Southern Inyo Healthcare District

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA FRESNO DIVISION**

10 | In re

11 |                                                    Bankruptcy Case No.:  16-10015
                                                       Chapter 9
12 | SOUTHERN INYO HEALTHCARE
DISTRICT                                        Adv. Case No.: 18-01031
13 |
                                                       JSS1
14 | Chapter 9 Debtor.

15 | SOUTHERN INYO HEALTHCARE          **DECLARATION OF RICHARD**
DISTRICT, plaintiff                         **FEDCHENKO IN SUPPORT OF**
16 |                                                    **MOTION FOR PRELIMINARY**
                                                       **INJUNCTION AGAINST VI**
17 |          v.                                         **HEALTHCARE FINANCE, INC COURT**

18 |
HEALTHCARE CONGLOMERATE          **Hearing:**
19 | ASSOCIATES, LLC; VI HEALTHCARE     Date: November 29, 2018
FINANCE, INC.; and DOES 1 through 10,   Time: 1:30 p.m.
20 | defendants.                                 Place: Courtroom 11
                                                       2500 Tulare St., 5th Fl
21 |                                                    Fresno, California

22 |

23 |

24 |          **COMES NOW,** SOUTHERN INYO HEALTHCARE DISTRICT and submits the

25 | Declaration of Richard Fedchenko in support of its Motion for Preliminary Injunction Against

26 | Vi Healthcare Finance, Inc., and for sequestration of tax revenues or further Order of this Court.

27 | ///

28 | ///

Respectfully submitted this 31st day of October, 2018.

THE SHINBROT FIRM

By:/s/Jeffrey S. Shinbrot
Jeffrey S. Shinbrot, Special
Litigation Counsel for the Southern Inyo
Healthcare District

## DECLARATION OF RICHARD FEDCHENKO

I, Richard Fedchenko, declare and states as follows:

1.    I am over the age of 18.  I was the president of the board of directors of the Southern Inyo Healthcare District ("Debtor" or "District") from December, 2015 to December, 2017.  I submit this declaration in support of Debtor's application for a preliminary injunction against Vi Healthcare Finance, Inc. ("Vi").  Unless otherwise stated, I have personal knowledge of the following facts.

2.    During my presidency of the District's Board, I was personally familiar with the operations of the District and I kept electronic mails related thereto in the ordinary course of the District's business, including the electronic mail referenced in this declaration.

3.    On July 14, 2017, I received an electronic mail message from Alan Germany, who I am informed and believe was the Chief Financial Officer of Healthcare Conglomerate Associates, LLC ("HCCA") at the time the email was received by me.  A true and correct copy of that email is attached hereto as Exhibit "3."

4.    Exhibit 3 discusses the Debtor's potential financing with Vi Healthcare Finance, Inc. and Mr. Germany states "SIHD has no choice but to accept the offer from Benny [Yorai Benzeevi]."  My understanding of the "offer" referenced therein was the Vi Healthcare Finance, Inc., loan.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: _10/31/18_                          _Richard Fedchenko_
                                            RICHARD FEDCHENKO

EXHIBIT 3

From: **Alan Germany** agermany@teamhcca.com 
Subject: RE: cash flow needs short term
Date: July 14, 2017 at 10:22 PM
To: Richard Fedchenko dickfedko@gmail.com

Dick:  I was just doublechecking the timing as to the large PRIME IGT.  The disbursement of $563,000 will need to occur the first week of October, with the return of $1.1 MM anticipated by the end of the month.  Thus by the end of October, there should be runway to make it until March 2018, assuming the new public financing is in place by that point.  Thus there are two key issues: one: being able to fund that large IGT, two:  having the cash flow to cover expenses (along with the critical A/P backlog) between now and October.  These are the two reasons that I do not see any way around this issue.  SIHD has no choice but to accept the offer from Benny.  As you know by our various discussions over the months, my sole focus is the continued functioning of the healthcare district.  Even this week, I have continued searching for alternate funding sources. Capital One, which actually does a lot of healthcare business, was very specific with me yesterday that SIHD was just too small and they were not interested.  I was quite disappointed in my discussions several months ago with the state treasurer's office (CHFFA).  I was very surprised that they did not want to help.
The accounts payable in arrears (see the attached file) is the key issue at the moment.  As you can see, there are some listed on this spreadsheet, e.g. HCCA and Baker, that are not expecting to be paid at least until the March 2018 effective date.  Excluding those two leaves $939K on the attached schedule.  The $106K to EDD can probably also be delayed until the effective date (hopefully but not certain).  As you can see, physician payments are a key consideration on this schedule, along with the companies that provide them (in certain instances), e.g. Integrity Locums.  So the answer to your question below is yes, there are a number of critical vendors which will need to be brought current with the LOC funds.
I am also attaching a critical payments schedule.  As you can see, this totals $454K (for the most part a subset of the other schedule).  Some of these are obviously more critical than others, e.g. the physician payments.  This critical payments schedule is one of the key reasons the LOC has to be put in place as soon as possible.
To your question below, yes, I certainly concur with repaying the IGT borrowing as quickly as possible.
While I agree that it would be probably less expensive to have the 10%/20% combination, I also agree that the optics as to the 20% make the 15% across the board the way to go.
The interest expense is something I could model out, but unfortunately I just got to your email this evening as the kids had a church activity we attended this evening.  I will work on that modeling this weekend, but will not have it in time for tomorrow morning's board meeting.
I look forward to the discussion in the morning.
Thanks, Alan

---

From: Richard Fedchenko [dickfedko@gmail.com]
Sent: Friday, July 14, 2017 4:46 PM
To: Alan Germany
Subject: cash flow needs short term

Hi Alan-

If we approve the LOC, the first withdrawal will be to cover the $1mm + owed on the original LOC and the overdrafts.  One clause in the loan agreement states that we can only withdraw once each 4 months, and I am assuming that means after the second withdrawal, which would be on the heels of the first. Benny has said he is not "married" to this clause.

What are your projections of additional cash needs for the next 4 months? Can I just use the plan figures which show that we are good except for the IGT deposit? Additionally, I know we need to pay the doctors for past services. How much will that add to cash flow needs? Are there other critical vendors that will need to be brought current from these LOC funds?

We obviously need to minimize interest expense, so it will be critical to repay the IGT deposit as soon as the funds are received from the state. I assume you are on board for this.

Benny and I talked about a different approach to the interest situation. Since 20% sounds really bad, he offered to include the past $1mm and the new LOC at a 15% rate for all. I figure if we borrow the entire additional $1mm for a year, it will be a push, but if we borrow less and pay it back as soon as possible, it will be less expensive to leave the original debt at 10% with the new debt at 20%.  How do you see it?

If I understand and believe our projections then it seems that we will borrow only at the front end of a new LOC to pay the doctors, perhaps some other critical vendors, and to prepare for an IGT deposit, this latter amount being repaid as soon as funds are deposited. Could you determine the interest expense for that for tomorrow's discussion?

Thank you

Dick


Richard Fedchenko
President, Board of Directors
Southern Inyo Healthcare District
Lone Pine, CA 93545
dickfedko@gmail.com